UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 08-20453-CIV-COOKE/BANDSTRA

INGRID LOVE,

    *Plaintiff*,

v.

NORTHERN TOOL & EQUIPMENT
COMPANY, INC.,

    *Defendant*.

_____/

## ORDER ON MOTION TO REMAND

This matter is before me on Plaintiff Ingrid Love's ("Love") Motion to Remand [D.E. 5]. After reviewing the motion and response, I find, for the reasons stated below, that Plaintiff's Motion should be granted and the case should be remanded to the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida.

### I. BACKGROUND

On August 2, 2007, Love filed suit against Northern Tool & Equipment Company, Inc. ("Northern Tool") in state court. The Complaint alleges that Northern Tool terminated Love from her position as Store Manager of one of its Florida retail stores because she was pregnant, in violation of the Florida Civil Rights Act ("FCRA"), Fla. Stat. § 760.10. Love seeks compensatory and punitive damages, including damages for mental anguish, pain and suffering, emotional distress, loss of dignity and respect, back pay, front-pay, and lost benefits. Love also requests an award of attorneys' fees under Fla. Stat. § 760.11. The Complaint, however, does not state any specific monetary figure for damages sought in the case. The issue here is whether the amount in controversy

meets the $75,000.00 jurisdictional amount for federal jurisdiction under 28 U.S.C. § 1332.

This case was previously removed and remanded. After the remand, the parties engaged in discovery. Among other things, Northern Tool served an interrogatory on Love that specifically requested that she provide an itemization of her damages and the factual basis for any damages calculations. According to Northern Tool, Love refused to respond to the interrogatory or provide any specific information about the damages she seeks in the case.

On January 24, 2008, Northern Tool sent Love a letter informing her that it believed that her damages were now in excess of the $75,000.00 jurisdictional threshold and would remove the case to federal court unless Love stipulated that her damages did not exceed $74,999.00. Later that same day, Love rejected Northern Tool's offer to stipulate that her damages were less than the jurisdictional amount and offered to settle the case if Northern Tool agreed to pay her $70,000.00, in addition to paying her attorneys' fees. On February 28, 2008, Northern Tool filed a Notice of Removal and on March 18, 2008, Love filed its second motion to remand in this case.

## II.  LEGAL STANDARD

Under 28 U.S.C. § 1441, a defendant can remove an action to the United States District Court if that court has original jurisdiction over the action. 28 U.S.C. § 1441(a). United States District Courts have original jurisdiction over all civil actions between parties of diverse citizenship where the amount in controversy exceeds $75,000.00. 28 U.S.C. § 1332(a).

The party that removes the state court action to federal court must show that federal jurisdiction exists. *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001). Where the plaintiff has not pled a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional amount. *Id.*

In assessing the amount in controversy, the court should first determine from looking at the complaint whether it is "facially apparent" that the amount in controversy exceeds $75,000.00. *Id.* If the jurisdictional amount is not facially apparent from the complaint, the court should look to the notice of removal. *Id.* If the plaintiff challenges the removal by filing a timely motion to remand, the district court's inquiry is limited to the evidence available when the motion to remand was filed, i.e., the notice of removal and accompanying documents. *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1213-14 (11th Cir. 2007). If the evidence is insufficient to establish that removal was proper or that federal jurisdiction was present, the defendants and the court cannot "speculate in an attempt to make up for the notice's failings." *Id.* at 1215. Additionally, the district court should not grant leave for the defendant to conduct discovery or engage in its own discovery to ascertain the factual basis for jurisdiction. *Id.* at 1217. Thus, "removal statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand." *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994).

### III. DISCUSSION

Northern Tool asserts that it has demonstrated by a preponderance of the evidence that the amount in controversy exceeds $75,000.00. The evidence Northern Tool refers to is Love's $70,000.00 settlement offer, an affidavit from Northern Tool's Vice President of Human Resources, and its own unsupported calculations of Love's damages. The affidavit attached to the Notice of Removal states that, during Love's last full year of employment as a Store Manager, she received total gross wages of $83,669.72 ($47,985.98 in base salary and $35,683.74 in bonus earnings). The affidavit further states that the Store Manager who replaced Love received bonus payments equaling $11,609.89 during 2007 and $5,977.89 to date in 2008.

This evidence, however, does not provide me with any information on which I can calculate

Love's attorneys' fees, emotional distress damages, and punitive damages. The only damages I can calculate with any degree of certainty are Love's back pay and front pay, which are not enough to support federal diversity jurisdiction. Although other district courts have estimated damages in FCRA cases, despite the absence of supporting evidence, in determining the amount in controversy, I find that doing so is contrary to the Eleventh Circuit's instruction not to speculate as to the amount of damages when the evidence is insufficient to establish that removal was proper. I explain in more detail below why the evidence before me is insufficient and why this case should be remanded to state court.

### A.  *Settlement Offer*

I disagree with Northern Tool that the $70,000.00 settlement offer is sufficient evidence that the case is worth more than $75,000.00. I think the settlement offer is evidence that Love believes her case is worth only $70,000.00. None of the cases cited by Northern Tool are cases where a settlement offer for less than the jurisdictional amount has been deemed sufficient to show by a preponderance of the evidence that the jurisdictional amount will be met. *See*, *e.g.*, *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1212 (11th Cir. 2007) (only noting that settlement offers qualify as "other paper" under § 1446(b)); *Addo v. Globe Life & Accident Ins. Co.*, 230 F.3d 759, 761-62 (5th Cir. 2000) (settlement offer exceeded $75,000.00); *Martin v. Mentor Corp.*, 142 F. Supp. 2d 1346, 1349 (M.D. Fla. 2001) (settlement offer was for $175,000.00).

### B.  *Economic Damages*

#### i.  Back Pay

"Florida courts have held that decisions construing Title VII are applicable when considering claims under the [FCRA] because the Florida Act was patterned after Title VII." *Brown v. Cunningham Lindsey U.S., Inc.*, No. 305-141J32HTS, 2005 WL 1126670, at * 3 (M.D. Fla. May 11,

2005) (citing *MacLean v. City of St. Petersburg*, 194 F.Supp.2d 1290, 1301 (M.D. Fla. 2002)). "Under Title VII, a successful plaintiff is 'presumptively entitled to back pay,' which is calculated from the date of the adverse employment action until the date of judgment." *Id.* (citing *Nord v. United States Steel Corp.*, 758 F.2d 1462, 1472-73 (11th Cir. 1985). "[I]n calculating a back pay award, the trial court must determine what the employee would have earned had she not been the victim of discrimination, and must subtract from this figure the amount of actual interim earnings." *Id.* (citing *Richardson v. Tricom Pictures & Prods., Inc.*, 334 F. Supp. 2d 1303, 1310 (S.D. Fla. 2004)).

Love earned $47,985.98 base salary at Northern Tool at the time her employment was terminated. Plaintiff was unemployed for seven months. Her back pay based on her base salary is $27,999.00 (7/12 of $47,985.00). Love argues that this amount is subject to a set-off for unemployment compensation. Northern Tool disagrees. In *Brown v. A.J. Gerrard Mfg. Co.*, 715 F.2d 1549, 1550 (11th Cir. 1983) (en banc), the Eleventh Circuit held that "unemployment compensation benefits should not be deducted from Title VII back pay awards." Thus, for purposes of determining the amount in controversy, Love cannot deduct unemployment compensation from her estimated back pay award.

Love further argues that, based on her subsequent employment at Big Lots and CVS and her pending graduation from law school, her claim for economic damages has not increased but, rather, stands to decrease. She argues that, by November 6, 2007, she was already earning more than her salary at Northern Tool. Love worked for Big Lots from July 30, 2007 through September 22, 2007. Her base salary there was $38,000.00 and she had bonus potential. Love Dep. at 37-40. Later, Love became employed by CVS on September 24, 2007. Her base pay was $50,000.00 and she was entitled to bonuses. Her base pay at CVS was more than her base pay at Northern Tool. Love also

points out that she is a law student at FIU and is graduating in the next few months. As such, she expects to earn more as a lawyer than as a General Manager at Northern Tool.

Northern Tool's ninth affirmative defense states: "Plaintiff's Complaint must fail to the extent that she has failed to mitigate her damages, if any, as required by law." It would, therefore, be proper to consider Love's earnings and bonus opportunities at Big Lots and CVS in determining the amount of a potential back pay award as well as her earning potential as a lawyer. Neither party, however, has provided information regarding Love's earnings at these other two companies or her earning potential as a lawyer. As a result, I am going to assume that Love would have earned more at Big Lots and CVS (base salary plus bonuses) and as a lawyer than she would have at Northern Tool. This is consistent with the Eleventh Circuit's instruction that all uncertainties are to be resolved in favor of remand. *See Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994) ("where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand"). Assuming this is true, Love's back pay award would probably be limited to her lost wages during the seven months she was unemployed, i.e., $27,999.00, and a fraction of the bonus compensation that her replacement was paid for the first seven months of 2007, i.e., 7/12 of $11,609.89. Based on these amounts, I calculate an estimated total back pay award of $34,771.44 ($27,999.00 for base salary plus $6772.44 for 2007 bonus).

### ii. Front Pay

"In addition to back pay, prevailing Title VII plaintiffs are presumptively entitled to either reinstatement or front pay." *Brown*, 2005 WL 1126670, at 5. "Front pay and reinstatement are forms of equitable relief." *Id.* "The value of injunctive or declaratory relief for amount in controversy purposes is the monetary value of the object of the litigation that would flow to the plaintiffs if the injunction were granted." *Leonard v. Enter. Rent a Car*, 279 F.3d 967, 973 (11th Cir. 2002). Given

that, in determining her front pay, I concluded that Love probably earned more after she left Northern Tool, Love probably would not receive an award for front pay or reinstatement.

      C.      *Attorneys' Fees*

Love first argues, citing to *Ansari v. Bella Auto. Group, Inc.*, 145 F.3d 1270, 1271 (11th Cir. 1998), that attorneys' fees are costs and are not included in the amount in controversy. *Ansari* held that attorneys' fees are costs within the meaning of § 2310(d)(3)(B), and excluded from a calculation of the amount in controversy. Section 2310 governs remedies in consumer disputes. Love did not sue under § 2310. On the other hand, in *Brown*, a case involving the FCRA, the court stated: "When a statute authorizes the recovery of attorney's fees, a reasonable amount of those fees is included in the amount in controversy." *Brown*, 2005 WL 1126670, at *4 (citing *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1265 (11th Cir. 2000)).

The issue is whether the amount of attorneys' fees is calculated through the end of the case or terminate at an earlier date for jurisdictional purposes. There is conflicting case law on this point. *See*, *e.g.*, *Waltemyer v. Nw. Mut. Life Ins. Co.*, No. 06-597, 2002 WL 419663, at *2 (M.D. Fla. Feb. 2, 2007) (concluding that only attorneys' fees incurred prior to removal should be included in the amount in controversy); *Brown*, 2005 WL 1126670, at *4 (including prospective attorneys' fees in amount in controversy).

Under either approach, Love's attorneys' fees are not substantial enough to meet the jurisdictional amount when aggregated to Love's estimated back pay award. Love's attorney probably did not spend more than ten hours on this case prior to the first removal. I think a reasonable estimate would include two hours to meet with the client, two hours to review the EEOC file and any additional documents the client may have had, and six hours of research into the current state of the law and to draft a one-count, two-page complaint. Plaintiff's counsel has stated that his

hourly rate is $300.00 per hour. As such, the attorneys' fees incurred in this case prior to the first notice of removal are approximately $3,000.00. Even under *Brown*'s analysis, the attorneys' fees would only be $9,000.00. In *Brown*, the court accepted the plaintiff's representation that she would incur about three times in attorneys' fees through trial what she had incurred in attorneys' fees up to the time of removal. *Brown*, 2005 WL 1126670, at *4; *see also Destel v. McRoberts Protective Agency, Inc.*, No. 03-62067, 2004 WL 746293, at *3 (S.D. Fla. Feb. 17, 2004) (tripling attorneys' fees as an estimate of total attorneys' fees that would be incurred in case). The court, although skeptical about the accuracy of that estimate, accepted this calculation because the defendant had not provided a basis for its own estimate of the plaintiff's attorneys' fees and because "all uncertainties are to be resolved in favor of remand." *Brown*, 2005 WL 1126670, at *4. As in *Brown*, Northern Tool has not provided a basis for its own estimate of Love's attorneys' fees. As already stated, even under the standard most favorable to Northern Tool, Love's $9,000.00 estimated attorneys' fees are not sufficient to meet the jurisdictional threshold when aggregated to her estimated $34,771.44 back pay award.

      **D.**    *Emotional Distress*

The FCRA provides: "The court may also award compensatory damages, including, but not limited to, damages for mental anguish, loss of dignity, and any other intangible injuries, and punitive damages." Fla. Stat. § 760.11(5). Courts have considered plaintiffs' claims for emotional distress damages in determining the amount in controversy. *See*, *e.g.*, *Brown*, 2005 WL 1126670, at *5 (concluding that plaintiff's emotional distress and punitive damages further increased the amount in controversy); *Barnes v. JetBlue Airways Corp.*, No. 07-60441, 2007 WL 1362504, at *2 (S.D. Fla. 2007 May 7, 2007) (concluding that an award for emotional distress could easily match an award for economic damages).

Determining the value of Love's emotional distress claim is a difficult task to undertake without a large amount of speculation. Northern Tool suggests that I accept, for purposes of determining the amount in controversy, that Love's emotional distress award will equal her award for back pay based on her base salary alone, i.e., $27,999.00. Northern Tool does not, however, offer any evidence or point to any underlying facts that might support such an assertion. Instead, it cites to cases where courts have awarded emotional distress damages well in excess of Love's $27,999.00 in lost wages without comparing the factual or legal claims made in those cases to Love's claims or explaining the relevance of those awards to the issue at hand. Love, on the other hand, notes that she has not undergone any psychological counseling or medical attention that would make her emotional distress any more significant than the garden variety discrimination claim. A plaintiff need not, however, "introduce evidence of medical treatment to recover for emotional distress . . . under the FCRA." *Brown*, 2005 WL 1126670, at 5 (citing *Munoz v. Oceanside Resorts, Inc.*, 223 F.3d 1340, 1348-49 (11th Cir. 2000)). Although Love may recover some damages for emotional distress, there is no evidence before me to determine that amount. Under these circumstances, I cannot divine some dollar amount as emotional distress damages to aggregate to Love's back pay damages so that Northern Tool can meet the jurisdictional threshold for federal diversity jurisdiction. *See Lowery*, 483 F.3d at 1215 (instructing courts not to speculate regarding the propriety of removal where the evidence is insufficient to establish that removal was proper).

### E. *Punitive Damages*

"Where both actual and punitive damages are recoverable under a complaint each must be considered to the extent claimed in determining jurisdictional amount." *Bell v. Preferred Life Assurance Soc'y of Montgomery, Alabama*, 320 U.S. 238 (1943). Love did not claim a specific amount for punitive damages in her complaint. The FCRA allows for the recovery of punitive

damages up to $100,000.00. Fla. Stat. § 760.11(5). Northern Tool argues that, since nothing in Love's complaint or discovery responses indicates that she is seeking less than the maximum amount allowable in punitive damages, I should assume that Love is claiming the full amount available, i.e., $100,000.00. Northern Tool cites *Awad v. Cici Enter.*, No. 06-1278, 2006 WL 2850108, at *2 (M.D. Fla. Oct. 3, 2006), for the proposition that I should assume that Love is seeking the full amount of punitive damages available. The court in *Awad*, however, decided not to remand based on plaintiff's admission that she was seeking damages in excess of $75,000.00, not on the issue of punitive damages. Love has not made the same admission here.

Northern Tool has not introduced any evidence on which to base any calculation of punitive damages in this case. For example, it did not introduce evidence of jury verdicts with respect to punitive damages in similar cases. It also has not explained why the facts in this case would support a large punitive damages award. Under these circumstances, I find that Northern Tool has not met its burden to prove by a preponderance of the evidence that Love will recover $100,000.00 or any other amount in punitive damages. If the evidence is insufficient to establish that removal was proper, I cannot "speculate in an attempt to make up for the notice's failings." *Lowery*, 483 F.3d at 1215.

### IV.  CONCLUSION

Given Love's willingness to settle the case for $70,000.00 and that I was only given sufficient evidence to calculate Love's back pay award and that such award does not meet the jurisdictional amount of $75,000.00, I am granting Plaintiff's Motion to Remand [D.E. 5]. This case is closed. All pending motions are denied as moot.

**DONE AND ORDERED** in Miami, Florida, this 1st day of August 2008.

*Marcia G. Cooke*
MARCIA G. COOKE
United States District Judge

cc:

The Honorable Ted E. Bandstra

All counsel of record